## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**WESTON C. SNIPES,**
        **Plaintiff,**

**v.**                                      **No:  3:06cv331/LAC/MD**

**MICHAEL J. ASTRUE,**[1]
**Commissioner of Social Security,**
            **Defendant.**

_____

## ORDER and
## REPORT AND RECOMMENDATION

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Snipes' application for disability insurance benefits and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Act.

_____

[1]  On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he will be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff filed applications for SSI and disability insurance benefits on October 31, 2002 and November 13, 2002, respectively.  He claimed an onset of disability of June 1, 2001.  After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge (ALJ).  A hearing was held on January 11, 2005 at which plaintiff was represented by counsel and testified.  A vocational expert also testified.  The ALJ rendered an unfavorable decision on May 23, 2005 (tr. 13-20) and the Appeals Council declined review (tr. 4-7), making the decision of the ALJ the final decision of the Commissioner, and therefore subject to review in this court.  *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998).  This appeal followed.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal, the ALJ found that plaintiff had not engaged in substantial gainful activity since his claimed onset date; that plaintiff had chronic obstructive pulmonary disease (COPD) and an adjustment disorder, impairments that were severe but not severe enough to meet or equal any portion of the listings of impairments found in Appendix 1, Subpart P, Regulations No. 4; that his allegations regarding his limitations were not totally credible; that he retained the residual functional capacity to perform work with restrictions that require simple, routine work activity performed in a low stress environment, no lifting and carrying over 25 pounds frequently, 50 pounds occasionally, and no work

outside with no exposure to dust, fumes, gases, odors and humidity; that he was unable to perform his past relevant work; that he was of advanced age with a limited education with no transferrable skills; that he was still functionally capable of performing work that existed in significant numbers in the national economy such as cashier, stock/inventory clerk, and childcare worker; that he could also perform light, unskilled jobs of cashier, information clerk, and interviewer; and that the plaintiff was not disabled as defined in the Act.

## STANDARD OF REVIEW

The ALJ's decision will be reversed only if it is not supported by substantial evidence. *Falge, supra*. The court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether it is premised upon correct legal principles. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)(citations omitted). Findings of fact by the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps.  A finding of disability or no disability at any step renders further evaluation unnecessary.  The steps are:

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairment?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent any other work?

The claimant bears the burden of establishing a severe impairment that keeps him from performing his past work.  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Chester v. Bowen*, supra, 792 F.2d at 131; *MacGregor v. Bowen*, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.  *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

In December 1998 plaintiff suffered from a perforation of his sigmoid colon, known as perforated sigmoid diverticulitis.  A section of his colon was removed and a colostomy installed (tr. 92).  The colostomy was closed approximately six months later and the lower colon was reattached.  The next entry in the medical record was made approximately 13 months later when x-rays disclosed fractured ribs on the left with a partial lung collapse secondary to a motorcycle accident.  The injuries were treated with no further difficulties manifesting (tr. 97).

In October 2000 plaintiff began treatment at medical facilities of the Department of Veterans Affairs (VA).  His presenting problems were chronic loose bowel movements, and itching in his eye and skin (tr. 125).  The treating physician felt that the plaintiff's diarrhea was secondary to his prior bowel surgery but no particular treatment was recommended (tr. 129).  On December 26, 2000 a chest x-ray done at a VA facility was normal with evidence of old fractures (tr. 99).  On January 25, 2001 he indicated that his watery stools were occasional (tr. 106). Plaintiff was scheduled for a dermatological consult on August 23, 2001 but did not show up for the appointment (tr. 131).   On November 6, 2001 he complained of itching all over his body.  There was no mention of diarrhea at that visit (tr. 130-131). On December 18, 2001 his VA checkup was essentially unchanged.  His high blood pressure was under control (tr. 130) and he denied being depressed (tr. 138).  The next time plaintiff was treated by the VA was more than a year later, on February 20, 2003.  His medications for hypertension were refilled and he was noted to be doing well and stable, although he was also noted to be noncompliant with his medication (tr. 163-164).

On July 14, 2003 the VA performed a pulmonary function test which showed severe defect in pulmonary function but with marked improvement with a bronchodialator (tr. 171).  On August 29, 2003 plaintiff asked his VA counselor for a

disability tag which was denied because he was "not eligible" for one (tr. 165).  In November 2003 plaintiff was having severe abdominal pains and was admitted to the VA hospital for possible gallbladder surgery.  Gallstones were found but the surgeon declined to do the surgery because he did not feel that plaintiff was physically able to withstand such surgery (tr. 174).  He was discharged improved (tr. 203).

On July 16, 2004 plaintiff complained of chest pain.  A stress test was read as normal (tr. 322).  On August 18, 2004 gallbladder surgery was again considered but the physician did not feel plaintiff was a good risk and recommended more testing (tr. 328-330).

On March 9, 2005 VA records indicate that plaintiff suffered an episode of apnea when he stood up from a squatting position.  The record during that visit indicated that his blood pressure was elevated.  Under the section entitled "chronic medical problems" there is no mention of bowel problems.  The medical assessment included high blood pressure, not well controlled, and moderate COPD (tr. 350-352).  On May 3, 2005 a stress test was performed at a VA facility and was read as normal but with poor functional capacity secondary to pulmonary disease; borderline for ischemia (tr. 359-361).

Plaintiff was seen for a consultative examination by Elizabeth Dickinson, M.D., at the request of the Office of Disability Determinations on January 30, 2003.  Dr. Dickinson noted chief complaints of diverticulitis necessitating a colostomy, since reversed, COPD, long-standing hypertension and chronic pruritus.  On physical examination there were mild audible wheezes when speaking and some overall increased effort to perform normal respiratory movement.  There was poor air flow in the bases of the lungs on both sides.  Range of motion in the shoulders indicated mild soreness and pain with mildly diminished rotational movement indicating some chronic degenerative joint disease in the shoulders but with full strength in the shoulders and full grip in both hands with normal fine and gross motor dexterity.

Range of motion in the hips and knees was normal.  There were arthritic changes in the knees but with full strength in the lower extremities and no swelling in any joints. There was full range of motion in the lumbar spine but with some stiffness and mild loss of lumbar lordotic curvature.  Straight leg raising was negative bilaterally and the neurological exam was entirely normal.   Dr. Dickinson's diagnosis was diverticulitis from a ruptured sigmoid diverticulum in December 1998 with reversed colostomy, now well healed, no ongoing acute difficulty at this time; COPD, noting that plaintiff had stopped smoking in 1998 but continued to have a significant degree of airway congestion on a regular basis with mild to moderate obstruction on pulmonary function testing, little improvement post bronchodilator; hypertension under good control; and diffused degenerative joint disease.  Dr. Dickinson indicated that she understood "why it would be difficult to return to the active outdoor work that he always did for gainful employment" (tr. 154-157).[2]

## DISCUSSION

The plaintiff argues that the Appeals Council erred in failing to consider evidence, not submitted to the ALJ, that plaintiff had a serious heart condition, that the ALJ erred in failing to find that plaintiff's gastrointestinal condition severe, in improperly discounting plaintiff's subjective complaints of pain, in not giving proper weight to a Department of Veterans Affairs disability rating, and in not posing a proper hypothetical question to the vocational expert, and that plaintiff was disabled from his onset date as a matter of law.  The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the plaintiff was not

---

[2]On December 24, 2003 a consultative psychiatric examination was done by Al Harley, M.D. (tr. 179-181). Plaintiff does not claim that his psychological condition contributes to his disability so Dr. Harley's report will not be discussed.

disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

      1.    <u>Appeals Counsel error concerning plaintiff's heart condition.</u>

      Plaintiff's first contention is that the Appeals Council erred when it failed to consider new evidence presented to it after the ALJ's decision had gone up on appeal.  Plaintiff contends that the new evidence, which appears at tr. 315-371, would force a finding that he had proven that he met or equaled a listed impairment.

      "When the Appeals Council refuses to consider new evidence submitted to it and denies review, that decision is also subject to judicial review because it amounts to an error of law.  20 C.F.R. §§ 404.970(b), 416.1470(b) . . . .  When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary.  20 C.F.R. § 404.955."  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).  Thus, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."  21 F.3d at 1067.  "To review the Appeals Council's denial of review, courts will have to look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the Appeals Counsel must consider in making its decision whether to review an ALJ's decision. *See* 20 C.F.R. S 404.970(b) ( "Appeals Council *shall* evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the administrative law judge hearing decision.")."  *Falge v. Apfel*, 150 F.3d 1320, 1324 (11th Cir. 1998).  That does not mean, however, that a reviewing court can consider the new evidence in determining whether the Commissioner's decision was supported by substantial record evidence.  For that purpose, the court may look only to the evidence that was before the ALJ at the time he made his decision.  *Id.*

Since the new evidence has not yet been considered by the ALJ, the issue for this court is whether a remand for that purpose is required.  A remand for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g)[3] is warranted *if* the claimant shows "that (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level."  *Falge*, 150 F.3d at 1323; *Keeton*, 21 F.3d at 1067; *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986), citing *Cherry v. Heckler*, 760 F.2d 1186 (11th Cir. 1985).[4]  To be material, the new evidence must relate back to the original alleged onset date of disability, or at least must relate to the disabilities litigated administratively.  *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988).[5]  Good cause may be shown, for example, where the evidence did not exist at the time of the administrative decision.  *Cherry v. Heckler*, 760 F.2d at 1192.  Therefore, if the court finds that the evidence was noncumulative and material and that good cause has been shown, remand to the Commissioner under sentence six of 42 U.S.C. § 405(g) is appropriate.

The defendant here argues that even if the new evidence meets the *Falge* criteria, remand is not appropriate because the *Falge* criteria were *dicta* only, and further because the Appeals Council did in fact consider the new evidence, negating

---

[3] Remand may occur pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g).  *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).  A sentence six remand can occur on the motion of the Secretary before she files her answer for good cause, or, alternatively, upon a showing that there is new material evidence and good cause for the failure to incorporate such evidence into the record.

[4] The Supreme Court has noted a conflict among the circuits as to the judicial standard of review as to this issue.  *Sullivan v. Finkelstein*, 496 U.S. 617, 110 S.Ct. 2658, 2664 n. 6, 110 L.Ed.2d 563 (1990).  This court must follow the standard set by *Caulder*, 791 F.2d at 875, which reiterated the ruling in *Cherry* that the court determines the materiality of new evidence for purposes of remand in a *de novo* proceeding as a matter of law.

[5] Stated another way, the new evidence must be relevant to a condition existing on or before the ALJ's decision, *Thomas v. Sullivan*, 928 F.2d 255, 260-261 (8th Cir. 1991), or at least before the final decision of the Appeals Council.  *See Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986) (Appeals Council may consider new evidence.).

*Case No: 3:06cv331/LAC/MD*

this court's jurisdiction to review the Appeal's Council's decision.  If the *Falge* decision contained only *dicta*, that *dicta* became binding precedent in *Vega v. Commissioner of Social Security*, 265 F.3d 1214 (11th Cir. 2001).  There, the court reaffirmed the *Falge* criteria, and acting on them, confirmed its jurisdiction to remand in a case very similar to this one.

As to the defendant's argument that the Appeals Council considered the new evidence, evidence of such review is scant.  The Appeals Council's decision addressed the new evidence by saying "[w]e considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 4-5).  This provides the reviewing court with no reasoned opinion stating why review was declined or why the new evidence was thought not to be material.  This court therefore has no assurance that the recitation quoted above is proof that the Appeals Council meaningfully considered the new evidence. *Vega*, 265 F.3d at 1218.

Even so, plaintiff's argument fails.  The new evidence was not material such that a reasonable possibility exists that it would change the administrative result, as defined in *Falge* and *Vega*.  Plaintiff points to a stress test performed at the VA facility in Biloxi, MS on May 3, 2005.  The test results were recorded as "Poor functional capacity secondary to pulmonary disease and Borderline for ischemia by EKG criteria." (Tr. 361).  However, the recommendation following the findings was to correlate the findings with a myocardial perfusion (nuclear) Report.  The myocardial perfusion test, performed the next day, showed "no evidence of myocardial ischemia or infarction," normal ejection fraction and ventricle size and no defects of myocardial perfusion (tr. 358).  Thus, although the stress test had a borderline finding, the follow-up nuclear test was entirely normal.  There is therefore no reasonable possibility that this evidence would have changed the result.

Moreover, plaintiff never claimed that he was disabled by a cardiac condition.  The Appeals Council did not err in failing to grant review on this evidence.

    2.    <u>ALJ errors.</u>

        a.    <u>Plaintiff's GI problem.</u>

      Plaintiff next contends that he is disabled because of bowel problems.  The record shows that he underwent surgery in 1998 for a perforated colon.  At the hearing before the ALJ he testified that he suffers from diarrhea such that he must use the bathroom every two hours, and has no control over it (tr. 386-387).  The vocational expert testified that, if this were true, plaintiff would be unemployable (tr. 392).  However, the medical record does not support this claim.  In October 2000 plaintiff reported to the VA that he had "chronic loose bm's" (tr. 125).  The VA apparently suspected hyperthyroidism, but a thyroid test discounted that as a cause (tr. 129).  There is no further mention of diarrhea anywhere in the medical record.  So noting, the ALJ found that plaintiff's claimed bowel problems were not severe (tr. 14).

      At step two the ALJ must determine whether the claimant has a severe impairment.  20 C.F.R. § 1520(c).  The burden at this step is on the claimant. *Chester v. Bowen, supra.*  The Commissioner's regulations provide:

      What we mean by an impairment(s) that is not severe.

      (a) **Non-severe impairment(s).** An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.
      (b) **Basic work activities.** When we talk about basic work activities, we mean the abilities and aptitudes necessary to do most jobs.  Examples of these include--
      (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
      (2) Capacities for seeing, hearing, and speaking;
      (3) Understanding, carrying out, and remembering simple instructions;
      (4) Use of judgment;

**(5) Responding appropriately to supervision, co-workers and usual work situations;  and**

**(6) Dealing with changes in a routine work setting.**

**20 C.F.R. § 404.1521.  The Commissioner has adopted an interpretive ruling that specifically addresses how to determine whether medical impairments are severe. The ruling provides in part:**

> **As explained in 20 C.F.R. §§ 404.1520, 404.1521, 416.920(c), and 416.921, at the second step of sequential evaluation it must be determined whether medical evidence establishes an impairment or combination of impairments "of such severity" as to be the basis of a finding of inability to engage in any SGA [substantial gainful activity]. An impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered (i.e., the person's impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities). Thus, even if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA.**

**SSR 85-28, 1985 WL 56856.**

In ***Brady  v. Heckler***, 724 F.2d. 914 (11th Cir. 1984) the Eleventh Circuit used the test  later adopted in SSR 85-28 to state that a claimant's abnormalities must be of such kind that they would not be expected to interfere with the individual's ability to work. The Eleventh Circuit has further explained that

> **[s]tep two is a threshold inquiry. It allows only claims based on the most trivial impairments to be rejected. The claimant's burden at step two is mild. An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Claimant need show only that her impairment is not so slight and its effect is not so minimal.**

*McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).  It is not for the reviewing court to say that under these circumstances plaintiff's impairment is or is not trivial, only that the ALJ must properly justify his finding on that issue.  And the ALJ's findings must be supported by substantial evidence.

Here the ALJ'S determination is supported by the record.  There was scant mention in the medical record of bowel difficulties, and the surgical repair necessitated by plaintiff's perforated colon occurred a year prior to plaintiff's claimed onset date.  With no further mention of the problem, nor any treatment for it, much less a treating physician's opinion that plaintiff was limited by it,  this court cannot say that the ALJ erred in not finding the condition to be severe.

> b. <u>Plaintiff's subjective complaints of pain and other symptoms.</u>

Plaintiff next contends that the ALJ improperly discounted his subjective complaints of pain and other symptoms.  As this court is well aware, pain is treated by the Regulations as a symptom of disability.  Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms."  *Accord* 20 C.F.R. § 416.929.   The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[6] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

---

[6]*Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

*Case No: 3:06cv331/LAC/MD*

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11ᵗʰ Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11ᵗʰ Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, \*3+ (11ᵗʰ Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11ᵗʰ Cir. 1991).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11ᵗʰ Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11ᵗʰ Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11ᵗʰ Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005).   However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840;  *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11ᵗʰ Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054.   Where he fails to do so, the Eleventh Circuit has stated that it would thus hold as a matter of law that the testimony is accepted as true.   *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an  explicit finding as to a claimant's

credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th Cir. 2005) (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[7] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand, supra,* at 1548-49. It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a

---

[7] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief, is the basis for the ALJ's credibility determination.

Plaintiff here claims that his chronic obstructive pulmonary disease, diverticulitis, hypertension and arthritis are conditions that could reasonably be expected to cause the pain he claims.  The ALJ held otherwise, noting that (1) the chronic obstructive pulmonary disease is improved when plaintiff uses his inhalers, and he had never been to the emergency room or hospital because of breathing problems (tr. 15); (2) plaintiff's bowel problems were not severe (tr. 14); (3) plaintiff's hypertension was not severe because it was well controlled and no physician had imposed any restrictions based on that condition (tr. 14); and (4) plaintiff took no anti-inflammatory or other medication for his arthritis, nor were there strength deficits or atrophy, and plaintiff frequently drove a motorhome out of state (tr. 16). In addition, the ALJ noted that the VA had denied plaintiff a disabled parking permit, that he was not given pain medication on a frequent or recurring basis, that his medical treatment was sporadic, and that there was no evidence of medication side effects that would be disabling (tr. 16).  All the foregoing was supported by the administrative record, and the ALJ'S decision is not subject to reversal here.

c.    The VA disability rating.

Next, plaintiff says that his VA disability rating was ignored by the ALJ.  It is clear in the Eleventh Circuit that a disability rating by the Department of Veterans Affairs or Florida's Division of Workers Compensation although not binding on the Commissioner, is entitled to great weight, and that it is error for the Commissioner to ignore it.  *Falcon v. Heckler*, 732 F.2d 827 (11th Cir. 1984) (holding that because Florida workers compensation disability law and Social Security disability law operate similarly, the ALJ must give great weight to a workers compensation

decision); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983) (holding that "findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight."); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A, March 25, 1981)[8] (holding that "a V[eterans] A[dministration] rating is certainly not binding on the [Commissioner], but it is evidence that should be considered and is entitled to great weight . . . and [in this case] should have been more closely scrutinized."); *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972); *Hogard v. Sullivan*, 733 F.Supp. 1465 (M.D. Fla. 1990).

As noted earlier, plaintiff has the burden of proving disability.   The only mention in the administrative record of a possible VA disability rating is in a medical note where plaintiff "informs me he has been granted nsc va pension . . . ." (Tr. 165). There is no other mention of a VA disability finding until plaintiff's counsel appended a copy of a VA rating decision to the brief filed in this appeal.  That evidence was never presented to either the ALJ or the Appeals Council, and this court cannot go outside the administrative record.  Thus, in light of what was before the ALJ, there was no reason to give the alleged VA pension any particular weight, particularly where all the ALJ had before him was a statement by the plaintiff to a physician's assistant.  Moreover, the record was, and still is, devoid of any proof of a particular degree of disability rating by the VA.

d.    Hypothetical question to vocational expert.

Finally, plaintiff says that the hypothetical propounded to the vocational expert was incomplete because it did not include all his impairments.  A hypothetical question must comprehensively describe the plaintiff's condition, and vocational expert testimony that does not accurately address that condition cannot be considered substantial record evidence.  *Pendley v. Heckler,* 767 F.2d 1561, 1563

---

[8] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

(11th Cir. 1985).   However, "the ALJ [is] not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported."  *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).   The hypothetical posed to the vocational expert in this case contained all the impairments ultimately found by the ALJ to be present, so the question was appropriate, and there was no error.


      Accordingly, it is ORDERED that the clerk shall change the docket to reflect that Michael J. Astrue is the proper defendant in this case.


      And it is respectfully RECOMMENDED that the decision of the Commissioner be AFFIRMED, and that the clerk be directed to close the file.


      At Pensacola, Florida this 10th day of May, 2007.


/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**



## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).



*Case No: 3:06cv331/LAC/MD*